UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL DAVID BRUSER, TRUSTEES UNDER THAT CERTAIN UNRECORDED REVOCABLE LIVING TRUST AGREEMENT DATED JULY 11, 1988, AS AMENDED, DOING BUSINESS AS DISCOVERY BAY CENTER; AND LYNN BRUSER, TRUSTEES UNDER THAT CERTAIN UNRECORDED REVOCABLE LIVING TRUST AGREEMENT DATED JULY 11, 1988, AS AMENDED, DOING BUSINESS AS DISCOVERY BAY CENTER; | CIV. NO. 14-00387 LEK-WRP |

Plaintiffs,

vs.

BANK OF HAWAII, A HAWAII
CORPORATION, AS TRUSTEE, AS
SUCCESSOR BY MERGER WITH
HAWAIIAN TRUST COMPANY, LIMITED,
A FORMER HAWAII CORPORATION AND
AS SUCCESSOR TRUSTEE UNDER THAT
CERTAIN TRUST AGREEMENT DATED
JUNE 6, 1974;

Defendant.

_____

vs.

JULIE G. HENDERSON, as Trustee
of the Julie G. Henderson
Irrevocable Trust, and as
Trustee of the Jean K. Gowans
Irrevocable Trust, and as
Trustee of the Louis L. Gowans,
Jr. Irrevocable Trust; RICHARD
L. GOWANS, as Trustee of the
Richard L. Gowans Irrevocable
Trust; KEVIN I. YOKOHAMA;
ASSOCIATION OF APARTMENT OWNERS

DISCOVERY BAY; SUSAN SHEETZ; and
PATRICIA SHEETZ BOW,

      Intervening Defendants.

_____

BANK OF HAWAII, a Hawaii
corporation, as Trustee, as
successor by merger with
Hawaiian Trust Company, Limited,
a former Hawaii corporation and
as successor Trustee under that
certain Trust Agreement dated
June 6, 1974,

      Counterclaim Plaintiff,

      vs.

MICHAEL DAVID BRUSER and LYNN
BRUSER, Trustees under that
certain unrecorded Revocable
Living Trust Agreement dated
July 11, 1988, as amended, doing
business as Discovery Bay
Center,

      Counterclaim Defendants.

**ORDER REGARDING PLAINTIFFS/COUNTERCLAIM
DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

On August 8, 2019, this Court issued its Order Denying Plaintiffs' Objections and Adopting the Magistrate Judge's Findings and Recommendation to Grant Defendant's Motion for Order to Show Cause and to Deny Plaintiffs' Counter Motion. ("OSC"). [Dkt. no. 259.[1]] On August 28, 2019,

_____
[1] The OSC is also available at 2019 WL 3754571.

Plaintiffs/Counterclaim Defendants Michael David Bruser and Lynn Bruser, Trustees under that certain unrecorded Revocable Living Trust Agreement dated July 11, 1988, as amended, doing business as Discovery Bay Center ("the Brusers"), filed their response to the OSC ("Response"). [Dkt. no. 260.] On September 4, 2019, a hearing was held on the OSC, and continued to September 20, 2019, at which this Court held the Brusers in contempt, directed Defendant/Counterclaim Plaintiff Bank of Hawaii, as Trustee ("BOH"), to file two declarations for attorney's fees, and gave the Brusers time to object to both declarations. [Minutes, filed 9/4/19 (dkt. no. 261); Minutes, filed 9/20/19 (dkt. no. 264).]

On October 4, 2019, BOH filed its Declaration of Counsel in Support of Award of Attorney's Fees and Costs ("BOH's First Declaration"), and, on October 18, 2019, its Declaration of Counsel in Support of Further Award of Attorney's Fees and Costs ("BOH's Second Declaration").[2] [Dkt. nos. 267, 271.] On October 10, 2019, the Brusers filed their objection to BOH's First Declaration ("Brusers' First Objection"), and on October 25, 2019, their objection to BOH's Second Declaration ("Brusers' Second Objection"). [Dkt. nos. 269, 276.] On

---

[2] BOH's First Declaration and BOH's Second Declaration are referred to collectively as "BOH's Declarations."

October 25, 2019 and November 8, 2019, BOH filed its replies to the Brusers' objections. [Dkt. nos. 275, 278.] For the reasons set forth below, the Brusers are held in civil contempt and sanctioned in the amount of $9,767.85, representing BOH's reasonable attorney's fees and costs.

## BACKGROUND

The factual and procedural background of this matter is summarized in the OSC, and the May 2, 2019 Findings and Recommendation to Grant Defendant's Motion for Order to Show Cause and to Deny Plaintiffs' Counter Motion ("F&R"). [Dkt. no. 253.[3]] Therefore, only relevant facts will be discussed here.

## I.    The Brusers' Response to the Order to Show Cause

In their Response, the Brusers argue they did not intentionally violate this Court's February 13, 2019 Order ("Receivership Order"), [dkt. no. 243,[4]] which required them to

---

[3] The F&R is also available at 2019 WL 2194857. The F&R addressed: BOH's Motion for Order to Show Cause Why Plaintiffs Should Not Be Held in Contempt for Failing to Comply with Receivership Order ("Contempt Motion"); [filed 3/26/19 (dkt. no. 244);] and the Brusers' Counter-Motion for a Stay of All District Court Proceedings, or in the Alternative for the Removal of the Present Temporary Receiver ("Motion for Stay and Reconsideration"), which they filed with their memorandum in opposition to the Contempt Motion, [filed 4/16/19 (dkt. no. 250)].

[4] The Receivership Order was entered pursuant to the Court's February 7, 2019 Amended Order (1) Granting

(. . . continued)

turn over books and records to the temporary receiver. [Response at 3.] Instead, they argue their good faith attempts to do so failed due to the actions of the receiver. See id. at 5 (stating Michael Bruser would testify that the receiver "ignored Mr. Bruser's invitation to meet with him and receive the books and records").

## II. **Post-Hearing Filings**

BOH's First Declaration, submitted in accordance with this Court's instructions, requests $4,621.00 in attorney's fees, plus Hawai`i General Excise Tax ("GET"). [BOH's First Decl. at ¶ 9, Exh. A (billing log).] In response, the Brusers argue: 1) this Court misinterpreted a decision of the state probate court; [Brusers' First Objection at 4-5;] 2) the monetary award is $137,434.00, representing the trustee's fees for a limited period of time, and no amount has been awarded for any trustee's fees outside that limited period of time; [id. at 5-6;] 3) BOH refused to accept payment or security in satisfaction of the Brusers' obligation; [id. at 6-7;] 4) on September 23, 2019, the Brusers paid BOH $308,203.65, rendering

---

Defendant/Counterclaim Plaintiff Bank of Hawaii's Motion for Appointment of Temporary Receiver and (2) Granting in Part and Denying in Part Intervenor Defendant/Counterclaim Plaintiff Association of Apartment Owners of Discovery Bay's Substantive Joinder ("2/7/19 Order"), [dkt. no. 242,] which is also available at 2019 WL 497615.

(. . . continued)

the appointment of the receiver moot; [id. at 7-8;] 5) this Court's finding of contempt is contrary to the Court's previous rulings; [id. at 8;] and 6) BOH's fee declaration was substantively and procedurally flawed, [id. at 8-9].[5]

BOH's Second Declaration, submitted in accordance with this Court's instructions, requests an additional $4,690 in attorney's fees, plus GET, and $91.41 in costs. [BOH's Second Decl. at ¶ 10; id., Exhs. A (billing log), B (invoice supporting request for costs).] In response, the Brusers object to the format and procedure followed by BOH, and to a number of billing items, including, *inter alia*, alleged clerical work and block billing entries. [Brusers' Second Objection at 3-5.] The Brusers also argue the Hawai`i Supreme Court recently held that the probate court did not find the Brusers to be liable for the trustee's fees. [Id. at 7.]

## STANDARD

Civil contempt sanctions are driven by two independent purposes: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (some citations omitted) (citing United

---

[5] The final argument presented in the Brusers' First Objection has not been discussed here because it is not relevant to the instant contempt proceedings, and has been otherwise addressed. See Order, filed 10/28/19 (dkt. no. 277).

<u>States v. United Mine Workers of Am.</u>, 330 U.S. 258, 303-04, 67

S. Ct. 677, 701-02 (1947)).  This district court has stated:

> The party claiming civil contempt must
> demonstrate a violation of the court's order by
> clear and convincing evidence.  [<u>In re Dual-Deck</u>
> <u>Video Cassette Recorder Antitrust Litig.</u>, 10 F.3d
> 693, 695 (9th Cir. 1993).]  Accordingly, the
> moving party must establish that "(1) that [the
> alleged contemnor] violated the court order,
> (2) beyond substantial compliance, (3) not based
> on a good faith and reasonable interpretation of
> the order, (4) by clear and convincing evidence."
> <u>United States v. Bright</u>, 596 F.3d 683, 694 (9th
> Cir. 2010) (quoting <u>Labor/Cmty. Strategy Ctr. v.</u>
> <u>L.A. County Metro. Trans. Auth.</u>, 564 F.3d 1115,
> 1123 (9th Cir. 2009)); <u>see also</u> <u>F.T.C. v.</u>
> <u>Affordable Media</u>, 179 F.3d 1228, 1239 (9th Cir.
> 1999) ("The standard for finding a party in civil
> contempt is well settled: The moving party has
> the burden of showing by clear and convincing
> evidence that the contemnors violated a specific
> and definite order of the court.").
>
> If the moving party meets this initial four-
> part test, the burden then shifts to the alleged
> contemnor to demonstrate why it was unable to
> comply.  <u>Affordable Media, LLC</u>, 179 F.3d at 1239;
> <u>Stone v. City & Cnty. of San Francisco</u>, 968 F.2d
> 850, 856 n. 9 (9th Cir. 1992).  In other words,
> the accused party must "show [that it] took every
> reasonable step to comply."  <u>Stone</u>, 968 F.2d at
> 856 n.9 (citation omitted).  To assess whether an
> alleged contemnor has taken "every reasonable
> step" to comply with the terms of a court order,
> the court can consider a variety of factors,
> including, for example, whether the contemnor has
> a history of noncompliance, and whether the
> contemnor failed to comply despite the pendency
> of a contempt motion.  <u>See</u> <u>Stone</u>, 968 F.2d at
> 857.

<u>Frankl v. HTH Corp.</u>, 832 F. Supp. 2d 1179, 1186-87 (D. Hawai`i

2011) (some alterations in <u>Frankl</u>).

## DISCUSSION

In the OSC, this Court affirmed and adopted the portions of the F&R wherein the magistrate judge found that: 1) The Brusers failed to comply with the Receivership Order; and 2) The Brusers had not demonstrated that they had taken reasonable steps to comply with the Receivership Order. OSC, 2019 WL 3754571, at *7. Therefore, the burden was shifted to the alleged contemnors, the Brusers. The only remaining question is whether the Brusers have shown that they have taken every reasonable step to comply with the Receivership Order during, but not limited to, the time period following entry of the OSC.

## I.   The Brusers' Contempt Objections

The Brusers assert the following objections to a finding of contempt.

### A.   Objections Regarding State Court Proceedings

The Brusers argue this Court "has erroneously assumed that the Brusers are contractually liable for the Trustee's Fee as determined in amount by the Hawaii Probate Court having jurisdiction over trusts also." [Brusers' First Objection at 4.] Similarly, in their second response, the Brusers also argue a recent Hawai`i Supreme Court decision – In re Trust Agreement Dated June 6, 1974, 145 Hawai`i 300, 302, 452 P.3d 297, 299 (2019), *recon. denied*, SCWC-15-0000632, 2019 WL 6040796

(Nov. 14, 2019) - clarifies that the probate court did not hold the Brusers liable for the trustee's fees. [Brusers' Second Objection at 7.]

First, the jurisdictional distinction between the probate court and this district court has been previously explained and will not be repeated in full here. See order granting BOH's motion for partial summary judgment ("Partial Summary Judgment Order"), filed 7/21/15 (dkt. no. 88), at 12 n.15; id. at 16.[6] Certain issues, including but not limited to the amount and reasonableness of the Trustee's Fees, were decided in probate court while the issue of the Brusers' liability was decided by this Court. See Tr. Agreement Dated June 6, 1974, 145 Hawai`i at 310, 452 P.3d at 307 (acknowledging that the probate court did not rule on the issue of the Brusers' liability for trustee's fees specifically because the matter was being litigated in this district court). This Court limited its ruling to find only that a document central to the litigation "requires the Brusers to pay all fees under the Trustee Agreement and that one such fee is the Trustee Fee." Partial Summary Judgment Order, 2015 WL 4469850 at *5. Therefore, the Brusers' liability for the trustee's fees is not currently at issue.

---

[6] The Partial Summary Judgment Order is also available at 2015 WL 4469850.

Second, the argument presented by the Brusers regarding the probate court litigation does not address the issues raised in the OSC, specifically whether the Brusers took reasonable steps in good faith to comply with the Receivership Order. See Brusers' First Objection at 4-5. Therefore, the Brusers' argument is rejected.

B.    **General Objections**

The Brusers argue this Court awarded only $137,434.00[7] and no additional amount for continuing trustee's fees to BOH. [Id. at 5.]  To the extent the Brusers are objecting to the amount owed to BOH including interest, this argument is rejected because it does not address the Brusers' good faith or reasonable steps to comply with the Receivership Order. Furthermore, the Brusers' previous filings indicate their understanding that interest has increased the amount of the subject judgment to at least $308,203.65.  See Response at 4 (acknowledging that the full amount of the subject judgment amounts to $308,203.65.)  Finally, the Brusers have not provided any authority to support the proposition that interest should not apply.  To the extent the Brusers are objecting to an award

_____

[7] Judgment was entered in favor of BOH, in the amount of $137,434.50.  [Judgment in a Civil Case ("Judgment"), filed 6/28/16 (dkt. no. 193), at 2.]  The Judgement was affirmed on appeal.  Bruser v. Bank of Hawaii, No. 16-16354, 2020 WL 242565 (9th Cir. Jan. 16, 2020).]

of additional judgment principal, the argument is denied because no such award has been entered.  Therefore, the Brusers' objection is denied.

The Brusers argue "the Trustee has refused to accept security for payment or even immediate payment." [Brusers' First Objection at 6.]  However, the Brusers' failure to turn over funds to BOH was one of the findings made in the 2/7/19 Order, and thereafter incorporated into the Receivership Order. See 2/7/19 Order, 2019 WL 497615 at *5 ("The Brusers do not dispute that they have not made payments.").  An alleged contemnor may not use the contempt proceeding as a platform for reconsideration of the "'legal or factual basis of the order alleged to have been disobeyed.'"  United States v. Ayers, 166 F.3d 991, 995 (9th Cir. 1999) (quoting United States v. Rylander, 460 U.S. 752, 756–57, 103 S. Ct. 1548 (1983)). Therefore, the Brusers may not use this contempt proceeding to relitigate the findings of previous orders.  Also, because this argument is limited to factual allegations regarding the Brusers' attempts to pay BOH directly and does not address any reasonable steps taken to comply with the Receivership Order, it does not address the issues raised in the OSC and is therefore rejected.

Next, the Brusers argue the temporary receivership has been terminated, or is moot, because they have made payment to

BOH in the amount of $308,203.65, in alleged full satisfaction

of the judgment. [Brusers' First Objection at 7-8.] To the

extent that the Brusers are attempting to relitigate the need

for a temporary receiver, because the issue was previously

decided in Court's 2/7/19 Order and Receivership Order, it is an

inappropriate use of the contempt proceedings. See Ayers, 166

F.3d at 995. To the extent that this argument has been

presented for any other purpose, it does not relate to the

Brusers' good faith and reasonable attempts to turn over books

and records to the temporary receiver. Therefore, this argument

is rejected.

        The Brusers also object to a finding of contempt

because this Court "specifically held that the Brusers were nice

people and that it would **not** hold the Brusers in civil contempt

if they immediately turned over the books and records to [BOH's

counsel, Johnathan Bolton, Esq.], which they did." [Brusers'

First Objection at 8 (emphasis in original).] However, "'[a]

court has wide latitude in determining whether there has been

contemptuous defiance of its order.'" Frankl, 832 F. Supp. 2d

at 1187 (some citations omitted) (quoting Gifford v. Heckler,

741 F.2d 263, 266 (9th Cir. 1984)).

        Here, the Judgment awarded BOH, inter alia,

$137,434.50 representing "the difference between what the

Brusers owed and what they paid between October 2014 and

December 2015, including the applicable GET." [Judgment at 2.]
The Brusers refused to pay the Judgment to BOH for the following
two years and seven months, and without a stay of execution or
supersedeas bond in place, this Court appointed a receiver to
execute the judgment. See 2/7/19 Order at *6 (stating that the
Brusers "failed to satisfy the amounts owed under the Judgment"
and that appointment of a receiver was an appropriate remedy).
Six months later, the Brusers still had not complied with either
the Judgment or the 2/7/19 Order/Receivership Order, resulting
in the entry of the OSC in August 2019. Similarly, at the time
of the first contempt hearing on September 4, 2019, the Brusers
still had not complied with the Judgment or the 2/7/19
Order/Receivership Order. At the September 20, 2019 contempt
hearing, the Brusers' bad faith disobedience of a lawful order
was demonstrated when the Brusers' counsel suggested that,
instead of the Brusers turning over the books and records as
required by the 2/7/19 Order, the receiver was "welcome to come
to [the facility housing the records in question] and look at
whatever he wants to look at." [Trans. of 9/20/19 hrg. on
contempt ("9/20/19 Hrg. Trans."), filed 9/30/19 (dkt. no. 266),
at 13.]

By the September 20, 2019 contempt hearing, BOH had
been forced to expend considerable resources filing motions and
briefs and making appearances in pursuit of a judgment entered

13

more than three years earlier. BOH's injury was a direct result
of the Brusers' bad faith defiance of this Court's Judgment and
2/7/19 Order, and the Brusers have not shown any reasonable
steps they have taken in an effort to comply. For these
reasons, the Brusers' objection is denied and the Brusers are
held in civil contempt.

## II. **Sanctions**

Having found the Brusers to be in civil contempt, the
Court turns to the issue of what sanctions are necessary to
fulfill the guiding purpose of civil contempt. "Unlike the
punitive nature of criminal [contempt] sanctions, civil
[contempt] sanctions are wholly remedial." Whittaker Corp., 953
F.2d at 517 (citation omitted). The United States Supreme Court
has "long recognized a common-law exception to the general
'American rule' against fee-shifting — an exception, inherent in
the power of the courts that applies for willful disobedience of
a court order or when the losing party has acted in bad faith,
vexatiously, wantonly, or for oppressive reasons." Octane
Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 557
(2014) (brackets, citation, and some quotation marks omitted).
Here, civil contempt sanctions are warranted to compensate BOH
for the expenses it incurred: 1) to oppose the Brusers' Motion
for Stay and Reconsideration; and 2) in the proceedings
following the entry of the OSC. The Brusers are therefore

14

ordered to pay the reasonable attorney's fees and costs that BOH
incurred in connection with items 1 and 2.  These sanctions are
sufficient to fulfill the remedial purpose of civil contempt and
will compensate BOH for the losses sustained due to the Brusers'
willful disobedience of the Judgment and the 2/7/19 Order.

The determination of the amount of reasonable
attorneys' fees is typically a two-step process:

> "When calculating the amount of attorney
> fees to be awarded in a litigation, the district
> court applies the lodestar method, multiplying
> the number of hours reasonably expended by a
> reasonable hourly rate."  Ryan v. Editions Ltd.
> W., Inc., 786 F.3d 754, 763 (9th Cir. 2015)
> (citing Hensley v. Eckerhart, 461 U.S. 424, 433,
> 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).  The
> court must also decide whether to adjust the
> lodestar amount based on an evaluation of the
> factors articulated in Kerr v. Screen Extras
> Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975),
> which have not already been subsumed in the
> lodestar calculation.  Fischer v. SJB-P.D., Inc.,
> 214 F.3d 1115, 1119 (9th Cir. 2000) (citation
> omitted).

> The Kerr factors are as follows:

> (1) the time and labor required, (2) the
> novelty and difficulty of the questions
> involved, (3) the skill requisite to perform
> the legal service properly, (4) the
> preclusion of other employment by the
> attorney due to acceptance of the case,
> (5) the customary fee, (6) whether the fee
> is fixed or contingent, (7) time limitations
> imposed by the client or the circumstances,
> (8) the amount involved and the results
> obtained, (9) the experience, reputation,
> and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the
> nature and length of the professional

> relationship with the client, and (12)
> awards in similar cases.
>
> Kerr, 526 F.2d at 70. Factors one through five
> have been subsumed in the lodestar calculation.
> Morales v. City of San Rafael, 96 F.3d 359, 364
> n.9 (9th Cir. 1996). Once calculated, the
> "lodestar" is presumptively reasonable.
> Pennsylvania v. Delaware Valley Citizens' Council
> for Clean Air, 483 U.S. 711, 728, 107 S. Ct.
> 3078, 97 L. Ed. 2d 585 (1987); see also Fischer,
> 214 F.3d at 1119 n.4 (stating that the lodestar
> figure should only be adjusted in rare and
> exceptional cases).

Bodyguard Prods., Inc. v. Doe 1, CIVIL NO. 18-00276 JAO-RLP,

2019 WL 826447, at *4-5 (D. Hawai`i Feb. 21, 2019),

*reconsideration denied*, 2019 WL 1083764 (Mar. 7, 2019).

BOH requests the following amounts associated with
either the Motion for Stay and Reconsideration or the post-OSC
proceedings:

| Attorney | Rate | Hours | Subtotal |
|---|---|---|---|
| Johnathan Bolton | $350 | 23.7[8] | $8,295.00 |
| Vincent Piekarski | $420 | 0.5 | $ 210.00 |
| Christopher St. Sure | $260 | 3.1 | $ 806.00 |
| | | Total | $9,311.00 |
| | | 4.712% GET | $ 438.73 |
| | | **GRAND TOTAL** | **$9,749.73** |

[BOH's First Decl., Exh. A; BOH's Second Decl., Exh. A]

The Brusers have made a number of general objections
to BOH's requests, as well as objections to specific items
within BOH's Declarations.

---

[8] Mr. Bolton did not bill for 1.1 hours of logged time.
[BOH's First Decl., Exh. A.]

## A.  General Objections

The Brusers object to both of BOH's Declarations, arguing "no attempt was made to first meet and confer and no consultation statement thus filed pursuant to Local Rule 65.3." [Brusers' First Objection at 8-9; Brusers' Second Objection at 3.]  This objection has been construed as an objection pursuant to Local Rule 54.2 of the Local Rules of Practice for the United States District Court for the District of Hawaii. BOH's Declarations are in compliance with this Court's September 20, 2019 directive to BOH's counsel to file a declaration for the calculation of attorney's fees.  Therefore, this argument is rejected.

The Brusers also argue BOH should not be awarded the attorney's fees reflected in BOH's First Declaration because the majority of the descriptions of the work performed are vague. [Brusers' First Objection at 9.]  This argument is rejected because the entries in Exhibit A to BOH's First Declaration are sufficiently detailed to permit this Court to determine whether they were reasonably expended in connection with either the Motion for Stay and Reconsideration or the post-OSC proceedings.

## B.  Specific Objections to the Hours Expended

The Court next turns to the specific objections the Brusers raise, arguing that various time entries in BOH's Declarations do not reflect time necessarily expended.

17

## 1. **Clerical or Ministerial Tasks**

The Brusers object to entries in BOH's Second Declaration, Exhibit A, regarding September 20, 2019 (second), and September 23, 2019, on the ground that they reflect clerical work. [Brusers' Second Objection at 4.] "Clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." Jeremiah B. v. Dep't of Educ., Civil No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Hawai`i Jan. 29, 2010) (citing Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)), adopted 2010 WL 675698 (Feb. 22, 2010).

> The following is a list of tasks previously deemed clerical or ministerial in this district and therefore deemed non-compensable: reviewing Court-generated notices; scheduling dates and deadlines; calendaring dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

Liberty Mut. Ins. Co. v. Sumo-Nan LLC, CIVIL NO. 14-00520 DKW-KSC, 2017 WL 810277, at *12 (D. Hawai`i Mar. 1, 2017) (citations omitted). BOH requests 0.2 hours of attorney's fees for "[r]eview Court's electronic order" on September 23, 2019. [BOH's Second Decl., Exh. A.] "Communications with the court

18

and reviewing notices regarding hearings and deadlines are clerical and not compensable." <u>Liberty Mut.</u>, 2017 WL 810277 at *12 (citation and quotation marks omitted). This billing entry is for a review of a Court-generated notice. However, BOH did not include any information to identify the document, therefore the Court is not able to discern the document to which this billing entry refers. A similar fee request description is found on September 20, 2019 (second). <u>See</u> BOH's Second Decl., Exh. A. Between those two dates, the Court only generated one docket entry. <u>See</u> Minutes, filed 9/23/19 (dkt. no. 264). One of the two entries is thus prohibited as clerical, duplicative, or indiscernible. Therefore, the hours requested by Mr. Bolton will be reduced by 0.2 hours. The remaining entries are not clerical. Therefore, the Brusers' objections are otherwise rejected.

### 2. **Unproductive Work**

The Brusers object to the entries on BOH's Second Declaration, Exhibit A, representing September 4, 2019, August 20, 2019 (fourth and fifth),[9] and September 23, 2019 (first and second) on the ground that those entries constitute unproductive work. [Brusers' Second Objection at 4.] "Counsel

---

[9] Because there are no entries for August 20, 2019 in Exhibit A, the Brusers' objection is construed as an objection to the fourth and fifth entries for September 20, 2019.

for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Because none of the entries identified by the Brusers constitute unnecessary or unproductive work, the Brusers' objections as to these entries are rejected.

### 3.  Internal Communication

The Brusers object to the following entries on BOH's Second Declaration, Exhibit A, on the grounds that they are internal communication: August 19, 2019; August 28, 2019; August 29, 2019 (both); September 4, 2019; September 5, 2019 (first and second); September 8, 2019; September 16, 2019 (first); September 20, 2019 (first, third, and fifth); September 23, 2019 (first and second); and September 26, 2019 (first). [Brusers' Second Objection at 4-5.] On this issue, this district court has stated:

> The Court does not permit **more than one attorney** to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel. Sheehan v. Centex Homes, 853 F. Supp. 2d 1031, 1039 (D. Haw. 2011). The duplicative entries for client and co-counsel meetings, settlement conferences, and strategy meetings between co-counsel are not the types of events for which duplicative billing is permitted. See, e.g., Robinson v. Plourde, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010) (noting

that two professionals cannot bill for attending
the same meeting and "when a party's counsel meet
with one other, the Court deducts the duplicative
time billed."). "In such a situation, the Court
typically deducts the time spent by the lowest-
billing attorney." <u>Seven Signatures Gen. P'ship
v. Irongate Azrep BW LLC</u>, 871 F. Supp. 2d 1040,
1055 (D. Haw. 2012).

<u>Liberty Mut.</u>, 2017 WL 810277, at *12 (emphasis added).  However,

"[t]he Court recognizes that litigation often requires the

participation of multiple attorneys."  <u>Id.</u> at *13 (citation

omitted).  None of the entries cited by the Brusers constitute

unnecessary, duplicative, or excessive communication because

Mr. Bolton was the only attorney who billed time on those dates.

Furthermore, the case cited by the Brusers, <u>Massachusetts</u>

<u>Department of Public Health v. School Committee of Tweksbury</u>,

does not support any reduction in BOH's fee request.  <u>See</u> 841 F.

Supp. 449, 459 (D. Mass. 1993) ("I find that holding conferences

to discuss this case was consistent with the demands of

reasonably diligent and reasonably competent representation.  It

is not unreasonable for attorneys to consult one another about

strategy or law, or meet in person to develop guidelines about

work to be performed.").  Therefore, the internal communication

objections are denied.

### 4.  **Invisible Work**

The Brusers object to the following entries on the

grounds that they represent "invisible work": August 8, 2019;

August 9, 2019; August 19, 2019; August 28, 2019 (both);

September 4, 2019 (both); September 5, 2019 (first);

September 8, 2019; September 16, 2019 (first and second);

September 20, 2019 (all); September 23, 2019 (all);

September 26, 2019 (both). [Brusers' Second Objection at 5.]

The Brusers cite Lockary v. Kayfez, arguing that it was not

permissible for BOH to "charge for work claimed to have been

performed that is not directly reflected in filed papers in the

court's file. . . ." [Id. (citing Lockary v. Kayfetz, 974 F.2d

1166, 1177 (9th Cir. 1992)).[10]] However, this is a

mischaracterization of the rule in Lockary. There, the Ninth

Circuit held that it was improper for the magistrate judge to

add an additional sum, which was not "directly reflected in or

inferable from" the filed papers. Lockary, 974 F.2d at 1177.

In contrast, the rule proposed by the Brusers is that all

chargeable time must be directly reflected in the party's

filings. Because the Brusers have not cited any relevant

authority, and because the work the Brusers identify in this

objection was reasonable and necessary, the Brusers' "invisible

work" objection is denied.

---

[10] Lockary was superseded on other grounds by Fed. R. Civ.
P. 11 (1993). Margolis v. Ryan, 140 F.3d 850, 854-55 (9th Cir.
1998)

## 5. __Block Billing__

The Brusers object to the following entries on the ground that they constitute block billing: August 9, 2019; September 4, 2019 (first); and September 26, 2019 (first). [Brusers' Second Objection at 5-6.] Block billing occurs when entries do not specify the amount of time spent per task. District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). None of the entries cited by the Brusers constitute impermissible block billing, as the time spent is sufficiently documented. Although both the August 9, 2019 entry and the first September 26, 2019 entry refer to correspondence and a telephone conference, the combination of the two tasks did not constitute improper block billing because, in each instance, the correspondence and the telephone conference were about the same subject. Therefore, the Brusers' block-billing objections are rejected.

## 6. __Summary__

In light of the Brusers' objections, Mr. Bolton's request for attorney's fees will be reduced by 0.2 hours.

According to BOH's First Declaration, Exhibit A, and BOH's Second Declaration, Exhibit A, and reduced as explained

23

*supra,* Section II.B.1, Mr. Bolton spent 23.5 hours working on this case, Mr. Piekarski spent 0.5 hours, and Mr. St. Sure spent 3.1 hours. [BOH's First Decl., Exh. A; BOH's Second Decl., Exh. A.]

This Court finds that all of the time that Mr. Bolton (as reduced by 0.2 hours from the initial request pursuant to the Brusers' objection), Mr. Piekarski, and Mr. St. Sure spent during the relevant period was reasonably and necessarily incurred as a result of the Brusers' failure to comply with the 2/7/19 Order. Thus, this Court FINDS that Mr. Bolton's time of 23.5 hours, Mr. Piekarski's time of 0.5 hours, and Mr. St. Sure's time of 3.1 hours are reasonable.

**B.** **Reasonable Hourly Rate**

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account. Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. Id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) *as amended on denial of reh'g*, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services. Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

<u>State Farm Fire & Cas. Co. v. Hanohano</u>, Civil No. 14-00532
SOM/KJM, 2016 WL 2984682, at *3 (D. Hawai`i Apr. 29, 2016),
*adopted by* 2016 WL 2885874 (May 17, 2016).

BOH asserts that: $350 is a reasonable hourly rate for
Mr. Bolton; [BOH's First Decl. at ¶¶ 6, 8;] $420 is a reasonable
hourly rate for Mr. Piekarski; [<u>id.</u> at ¶¶ 5, 8;] and $260 is a
reasonable hourly rate for Mr. St. Sure, [<u>id.</u> at ¶¶ 7-8]. BOH
states that Mr. Bolton is a partner at the law firm of Goodsill
Anderson Quinn & Stifel, a Limited Liability Law Partnership
("Goodsill"), and has nineteen years of experience as an
attorney. [<u>Id.</u> at ¶ 6.] Mr. Piekarski joined Goodsill in 1982
and has been a partner for over thirty years. [<u>Id.</u> at ¶ 5.]
Mr. St. Sure is an associate at Goodsill, and he graduated law
school in 2013. [<u>Id.</u> at ¶ 7.]

The Brusers do not contest the requested hourly rates.
A district court may rely on "its own familiarity with the legal
market" when determining the reasonableness of an attorney's
hourly rate. <u>Ingram v. Oroudjian</u>, 647 F.3d 925, 928 (9th Cir.
2011). Based on this Court's knowledge of the prevailing rates
in the legal community for work in similar cases, this Court
FINDS that the hourly rates for Mr. Bolton, Mr. Piekarski, and
Mr. St. Sure are manifestly reasonable. <u>See, e.g.</u>, <u>Liberty
Mut.</u>, 2017 WL 810277, at *10 & n.10 (finding the requested $400

hourly rate to be reasonable for an attorney admitted to the New York bar in 1983 and the Hawai`i bar in 1988).

    **C.**   **Total Fee Amount**

As previously stated, the lodestar is calculated by multiplying the number of hours worked for each attorney by his reasonable hourly rate. <u>Ryan</u>, 786 F.3d at 763. Here, the Court finds that the following represents the reasonable attorney's fees incurred in connection with the Motion for Stay and Reconsideration and the post-OSC proceedings:

| Attorney | Rate | Hours | Subtotal |
|----------|------|-------|----------|
| Johnthan Bolton | $350 | 23.5 | $8,225.00 |
| Vincent Piekarski | $420 | 0.5 | $ 210.00 |
| Christopher St. Sure | $260 | 3.1 | $ 806.00 |
| | | Total | $9,241.00 |
| | | 4.712% GET | $ 435.44 |
| | | **GRAND TOTAL** | **$9,676.44** |

The Court has considered the <u>Kerr</u> factors that have not been subsumed in the lodestar analysis and finds that an adjustment is not warranted. Therefore, BOH is entitled to an award of $9,676.44 in attorney's fees reasonably incurred in connection with the Motion for Stay and Reconsideration and the post-OSC proceedings. To the extent that BOH seeks attorney's fees in excess of $9,676.44, its request is denied.

    **D.**   **Costs**

The imposition of litigation costs, along with attorney's fees, is a permissible civil contempt sanction provided the sanction is compensatory rather than punitive.

Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017). Therefore, the costs imposed "may go no further than to redress the wronged party for losses sustained." Id. (citation and internal quotation marks omitted).

Here, BOH requests costs in the amount of $91.41, representing the cost of procuring the transcript of the September 20, 2019 hearing. [BOH's Second Declaration at ¶ 9, Exh. B.] Because this cost was incurred due to the misconduct at issue, and because the Brusers have not challenged this request, BOH is awarded $91.41 in costs as part of the contempt sanction.

## CONCLUSION

On the basis of the foregoing, the Brusers have not shown cause as to why they should not be held in contempt. Therefore, the Brusers are HEREBY HELD in civil contempt and ORDERED to pay sanctions representing BOH's reasonable attorney's fees and costs incurred: 1) to oppose the Brusers' Motion for Stay and Reconsideration; and 2) in the proceedings following the entry of the OSC. BOH is AWARDED $9,676.44 in attorney's fees and $91.41 in costs, for a total award of $9,767.85. The Brusers are ORDERED to pay $9,767.85 to BOH, through BOH's counsel, by **February 13, 2020**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, January 29, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MICHAEL DAVID BRUSER, ET AL. VS. BANK OF HAWAI`I, ETC.; CV 14-00387 LEK-WRP; ORDER REGARDING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**